UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LISA C.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

24-CV-355-LJV
DECISION & ORDER

---

On April 16, 2024, the plaintiff, Lisa C. ("Lisa"), brought this action under the Social Security Act ("the Act").  Docket Item 1.  She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2]  *Id.*  On July 17, 2024, Lisa moved for judgment on the pleadings, Docket Item 5; on August 8, 2024, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 8; and on August 22, 2024, Lisa replied, Docket Item 9.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Lisa applied for Disability Insurance Benefits ("DIB").  One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements.  *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).

For the reasons that follow, this Court denies Lisa's motion and grants the Commissioner's cross motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

I.   THE ALJ'S DECISION

On May 31, 2023, the ALJ found that Lisa had not been under a disability from September 1, 2019, through the date of the decision. *See* Docket Item 3 at 29. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a). *See id.* at 15–16.

At step one, the ALJ found that Lisa had not engaged in substantial gainful activity since September 1, 2019, the alleged onset date. *Id.* at 16. At step two, the ALJ found that Lisa suffered from three severe, medically determinable impairments: "left wrist fracture, status-post [sic] open reduction and internal fixation surgery; degenerative disc disease of the cervical spine with cervical spondylosis, status-post [sic] three fusion surgeries with instrumentation; and bilateral sciatica." *Id.*

At step three, the ALJ found that Lisa's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 20. More specifically, the ALJ found that Lisa's physical impairments did not meet or medically equal listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root) or 1.23 (non-healing or complex

3

fracture of an upper extremity).  *Id.*  And in assessing Lisa's mental impairments, the ALJ found that Lisa was mildly impaired in: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing herself.  *Id.* at 18–19.

The ALJ then found that Lisa had the residual functional capacity ("RFC")[4] to "perform sedentary work as defined in 20 C[.]F[.]R[. §] 404.1567(a)" except that:

> [Lisa] can frequently climb ramps and stairs.  [She] can occasionally climb ladders, ropes, and scaffolds and frequently balance, stoop, kneel, crouch, and crawl.  [She] can never work at unprotected heights or around moving mechanical parts.  She can never perform a job operating a motor vehicle.  [She] can occasionally handle with her left hand.  [She] can perform work with a sit/stand option, where she could change positions every 20 minutes.

*Id.* at 20.

At step four, the ALJ found that Lisa could perform past relevant work as a billing clerk or patient advocate.  *Id.* at 28–29; *see Dictionary of Occupational Titles* 214.382-014, 1991 WL 671878 (Jan. 1, 2016); *id.* at 241.357-010, 1991 WL 672249 (Jan. 1, 2016).  The ALJ therefore found that Lisa had not been under a disability from her alleged onset date through the date of the decision.  *See* Docket Item 3 at 29; *see also id.* at 16.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

## II.  ALLEGATIONS

Lisa raises a single argument: that the ALJ's step four finding was not supported by substantial evidence.  *See* Docket Item 5-1 at 11–16.  More specifically, she says that the ALJ failed to resolve an apparent conflict between the testimony of the vocational expert ("VE") and definitions in the Dictionary of Occupational Titles ("DOT").  *Id.* at 11.  For the reasons that follow, this Court disagrees.

## III.  ANALYSIS

At step four, the Commissioner decides whether, given a claimant's RFC, the claimant "can still do [his or her] past relevant work." 20 C.F.R. § 404.1520(a)(4)(v).  In other words, step four concerns whether a claimant's impairments prevent him or her from doing work done previously.  *See Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60, 67–68 (2d Cir. 2025).  To make that determination, an ALJ "may use the services of vocational experts or vocational specialists, or other resources[,] . . . [to] determine whether [a claimant] can perform [his or her] past relevant work." *Id.* § 404.1560(b)(2).

If an ALJ chooses to rely on a VE's testimony, however, the ALJ must "be alert to the possibility of 'apparent unresolved conflict[s]' between th[at] testimony and the [DOT]." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 91 (2d Cir. 2019) (quoting Social Security Ruling ("SSR") 00-4P, 200 WL 1898704, at *2 (Dec. 4, 2000)).  In this regard, an ALJ has an "independent, affirmative obligation . . . to undertake a meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the [VE whether] there is one." *Id.*  And "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or

5

decision about whether the claimant is disabled."  SSR 00-4p, 2000 WL 1898704, at *2.[5]

Here, the ALJ found that Lisa could perform sedentary work with a limitation to, among other things, only occasional handling with her left hand.  See Docket Item 3 at 16.  Lisa argues that given that limitation, there was an unresolved apparent conflict between the VE's testimony that Lisa could perform her prior work as a billing clerk or patient advocate and how the DOT defines those jobs.  See Docket Item 5-1 at 11–16.  And given that unresolved conflict, Lisa says, the ALJ's finding at step four was not supported by substantial evidence.  See id.

The ALJ determined that Lisa could occasionally handle with her left hand, Docket Item 3 at 20, and the VE testified that the limitation to occasional handling would not preclude Lisa's prior work as a billing clerk or a patient advocate, id. at 57–58.  According to the DOT, the job of patient advocate requires only occasional handling.  See DOT 241.357-010, 1991 WL 672249 (Jan. 1, 2016).  So at least with respect to that job, there was no conflict at all between the DOT and the VE's testimony.  And that alone would be enough to affirm the ALJ's determination.

The DOT defines the job of billing clerk, on the other hand, as requiring frequent handling, see id. at 214.382-014, 1991 WL 671878 (Jan. 1, 2016), more than the

---

[5] On January 6, 2025, the Social Security Administration issued SSR 24-3p, "rescinding SSR 00-4p and [] no longer requir[ing] adjudicators to identify and resolve conflicts between occupational information provided by [vocational specialists] and [vocational experts] and information in the [DOT]."  SSR 24-3p, 2024 WL 5256890, at *2.  But that regulation does not apply retroactively.  Id. at n.1.  Instead, the regulation provides that "[i]f a court . . . remands a case for further administrative proceedings after the applicable date of this SSR, [that court] will apply this SSR to the entire period at issue in the decision we make after the court's remand."  Id.

occasional handling that the ALJ found Lisa able to do with her left hand, *see* Docket Item 3 at 20.[6]  But Lisa is right-handed, *see* Docket Item 3 at 264, and the Second Circuit has explained that limitations to occasional handling and fingering with a non-dominant hand do not preclude jobs that the DOT describes as requiring even frequent handling and fingering, *see Colvin v. Berryhill*, 734 F. App'x 756, 759 (2d Cir. 2019).  Therefore, because the RFC's limitation to occasional handling applied only to her left hand, any conflict between the DOT and the VE's testimony that Lisa could perform past relevant work as a billing clerk is at worst technical and superficial.[7]

Indeed, as the Second Circuit has noted, the DOT definitions "do not state that a worker must be able to perform such handling or fingering with both hands, specifically with a non-dominant hand as well as a dominant hand."  *Id.*  And where a claimant's ability to perform such jobs remains unclear, "[t]he law recognizes that vocational experts 'may be useful' in supplementing the [DOT] definitions."  *Id.* (quoting SSR 96-9p, 61 Fed. Reg. 34478, 34482 (July 2, 1995)).  That is exactly what happened here.

In sum, there was no conflict between the DOT and the VE's testimony with respect to the job of patient advocate, which requires only occasional handling.  And

---

[6] The DOT defines "occasionally" as "up to 1/3 of the time" and "frequently" as "from 1/3 to 2/3 of the time."  *DOT* 214.382-014, 1991 WL 671878 (Jan. 1, 2016).

[7] The RFC did not include any limitation for "fingering," *see* Docket Item 3 at 20, and Lisa does not challenge that finding.  Nor did the ALJ include any "fingering" limitations in the hypotheticals posed to the VE.  *See id.* at 57–59.  In any event, and as noted above, the Second Circuit has found that limitations to occasional handling *and fingering* with a non-dominant hand do not preclude jobs that the DOT describes as requiring even frequent handling *and fingering*.  *See Colvin*, 734 F. App'x at 759.  So to the extent that Lisa's submissions suggest a conflict between the DOT and the VE's testimony with respect to "fingering," *see, e.g.*, Docket Item 5 at 13; Docket Item 9 at 4, that suggestion is misplaced.

7

while the job of billing clerk may require up to frequent handling under the DOT, see DOT 214.382-014, 1991 WL 671878 (Jan. 1, 2016), it does not explicitly require "handling or fingering with both hands," Colvin, 734 F. App'x at 759.  So the VE simply clarified what the DOT did not address, concluding that Lisa could perform both of those jobs notwithstanding the limitations to her left, non-dominant hand.  See Docket Item 3 at 57.  The VE's testimony therefore did not raise an apparent conflict that would trigger the ALJ's obligation to elicit any additional explanation, see Colvin, 734 F. App'x at 759, and the ALJ's step four determination was not error, see Gibbons v. Comm'r of Soc. Sec., 2023 WL 3830774, at *4 (2d Cir. June 6, 2023) ("The ALJ did not err because these limitations do not conflict with the [DOT].").

## CONCLUSION

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, Lisa's motion for judgment on the pleadings, Docket Item 5, is DENIED, and the Commissioner's cross motion for judgment on the pleadings, Docket Item 8, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.


SO ORDERED.

Dated:     March 3, 2026
           Buffalo, New York


                                             /s/ Lawrence J. Vilardo
                                            LAWRENCE J. VILARDO
                                            UNITED STATES DISTRICT JUDGE